IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br>CALVIN LYNN RODDY, JR. | NO. 2:26-CR-054-Z-BR |

## FACTUAL RESUME

In support of Calvin Lynn Roddy, Jr.'s plea of guilty to the offenses in Counts One through Four of the indictment, Roddy, the defendant; C.J. McElroy, the defendant's attorney; and the United States of America (the government) stipulate and agree to the following.

## ELEMENTS OF THE OFFENSE

To prove the offenses alleged in Counts One and Three of the indictment, each charging a violation of 18 U.S.C. § 1344(1), that is, bank fraud, the government must prove each of the following elements beyond a reasonable doubt:[1]

*First*. That the defendant knowingly executed a scheme or artifice;

*Second*. That the scheme or artifice was to defraud a financial institution, as alleged in the indictment;

*Third*. That the defendant had the intent to defraud the financial institution;

*Fourth*. That the scheme or artifice to defraud was material, employed a false material representation, or concealed a material fact; and

*Fifth*. That the defendant placed the financial institution at risk of civil liability or financial loss.

[1] Fifth Circuit Pattern Jury Instruction 2.58A (5th Cir. 2024).

A "scheme or artifice" means any plan, pattern, or course of action intended to deceive others in order to obtain something of value, such as money, from the institution to be deceived.

It is not necessary that the government prove all of the details alleged in the indictment concerning the precise nature of the alleged scheme or artifice, or that the alleged scheme or artifice actually succeeded. What must be proved beyond a reasonable doubt is that the accused knowingly executed a scheme that was substantially similar to the scheme alleged in the indictment.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation is also "false" when it constitutes a half truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A scheme, representation, or concealment is "material" if it has a natural tendency to influence or is capable of influencing, the institution to which it is addressed.

To act with "intent to defraud" means to do something with the specific intent to deceive or cheat someone, ordinarily for personal financial gain or to cause financial loss to someone else.

However, 'a scheme to defraud' demands neither a showing of ultimate financial loss nor a showing of intent to cause financial loss.

"Financial institution" means an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act); and a credit union with accounts insured by the National Credit Union Share Insurance Fund. *See* 18 U.S.C. § 20(1)-(2).

To prove that "the defendant placed the financial institution at risk of civil liability or financial loss," it is not necessary for the government to demonstrate that the financial institution actually suffered civil liability or financial loss, or that it faced a substantial likelihood of risk of loss..

To prove the offenses alleged in Counts Two and Four of the indictment, each charging a violation of 18 U.S.C. § 1028A(a)(1), that is, aggravated identity theft, the government must prove each of the following elements beyond a reasonable doubt:[2]

---

[2] Fifth Circuit Pattern Jury Instruction 2.48C (5th Cir. 2024).

*First*. That the defendant knowingly transferred, possessed, or used a means of identification of another person;

*Second*. That the defendant did so without lawful authority;

*Third*. That the defendant transferred, possessed, or used the means of identification of another person during and in relation to the offense of Bank Fraud, under 18 U.S.C. § 1344; and

*Fourth*. That the defendant knew that the means of identification in fact belonged to another real person, living or dead.

"Means of identification" means any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including any name, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, or employer or taxpayer identification number.

"Without lawful authority" means that the defendant transferred, possessed, or used another's means of identification either without that person's permission, beyond the scope of that person's legally obtained permission, or having obtained that person's permission illegally.

Identity theft is committed when a defendant uses the means of identification itself in a manner to defraud or deceive. It is not enough to be a violation of this law that the use of a means of identification was helpful or even necessary to accomplish the charged conduct unless the accused used that means of identification to deceive about the identity of the person performing the actions or receiving the benefits or services.

## STIPULATED FACTS

1. Calvin Lynn Roddy, Jr., the defendant, admits and agrees that on or about January 28, 2025, in the Amarillo Division of the Northern District of Texas, he knowingly executed a scheme or artifice to obtain monies or other property from a financial institution, the accounts of which were insured by the National Credit Union Share Insurance Fund, that is, Santa Fe Credit Union, by means of materially false or fraudulent pretenses, representations, or promises. Namely, the defendant submitted loan

documents purporting himself to be O.J., an actual person, to obtain an auto loan in the amount of $28,981.76. In violation of Title 18, United States Code, Section 1344(1).

2. The defendant further admits and agrees that on or about January 28, 2025, in the Amarillo Division of the Northern District of Texas, he knowingly possessed or used, without lawful authority, a means of identification of another person, that is, O.J., during or in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, Bank Fraud, as alleged in count one of the indictment, knowing that the means of identification belonged to another real person. In violation of Title 18, United States Code, Section 1028A(a)(1).

3. The defendant further admits and agrees that on or about February 20, 2025, in the Amarillo Division of the Northern District of Texas, he knowingly executed a scheme or artifice to obtain monies or other property from a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation, that is, Amarillo National Bank, by means of materially false or fraudulent pretenses, representations, or promises. Namely, the defendant submitted loan documents purporting himself to be O.J., an actual person, to obtain an auto loan in the amount of $21,958.32. In violation of Title 18, United States Code, Section 1344(1).

4. The defendant further admits and agrees that on or about February 20, 2025, in the Amarillo Division of the Northern District of Texas, he knowingly possessed or used, without lawful authority, a means of identification of another person, that is, O.J., during or in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), that is, Bank Fraud, as alleged in count three of the indictment,

knowing that the means of identification belonged to another real person. In violation of Title 18, United States Code, Section 1028A(a)(1).

5. In October 2025, the Federal Bureau of Investigation in Amarillo, Texas, was notified of a suspected fraud scheme involving Calvin Lynn Roddy, Jr. Through investigation, agents learned that Roddy would use information belonging to third parties to apply for auto loans and personal loans through various banks' online loan application systems. Roddy made these applications himself by either representing to the bank that he was acting on behalf of the loan applicant, or by using the applicant's true identifying information and falsely representing himself to be the applicant. As part of the online loan application process, the banks required the applicant to submit a driver's license photograph, proof of employment and legitimate income, and various other documents. The banks relied on these documents to prove both the identity of the applicant and whether the applicant had sufficient credit and means of income to qualify for the loan.

6. As part of his scheme, Roddy would help individuals obtain loans that they would not otherwise qualify for. This most often involved creating fictitious pay stubs that Roddy, or the applicant, would then provide to the bank to make it appear that the applicant had legitimate employment and sufficient income to qualify for the loan, when, in fact, the applicant did not.

7. As part of his scheme, Roddy would also use personal identifying information belonging to other individuals to apply for loans from the bank. These individuals were often the victims of identity theft, and Roddy would purchase their credit profile numbers from a third party and then use their personal information to apply

for loans without that individual's knowledge or consent. Roddy would use the individual's date of birth, driver's license number, and social security number to make it appear that the individual was the one submitting the loan application, when in fact, Roddy was one executing the application. Roddy would also provide the bank with fictitious pay stubs to demonstrate that the individual was employed and had sufficient income to qualify for the loan.

8. Roddy sought personal benefit from his scheme in several ways. In instances where Roddy helped another individual use their own information to obtain a personal or auto loan that they did not qualify for, Roddy would charge a fee for providing the individual with the fraudulent document(s) needed to complete the application (such as fictitious proof of employment, income, or residency) and for facilitating the loan process. For the fraudulent auto loans, Roddy would also negotiate a higher purchase price from the auto dealership accepting the loan proceeds and then request that the auto dealership pay Roddy the difference between the sales price and the loan proceeds to compensate Roddy for acting as an intermediary. In instances where Roddy used another real person's identifying information to obtain the loan without that person's knowledge or consent, Roddy would provide the proceeds of the loan (either cash or a vehicle) to a third party for a fee. In other instances where Roddy used another real person's identifying information to obtain the loan without that person's knowledge or consent, Roddy would keep the proceeds himself. This allowed him to obtain personal loan funds under the names of false applicants and to operate vehicles that were obtained through fraudulently issued loans.

9. According to financial documents obtained during this investigation, Roddy's scheme extended as far back as 2018 and involved well over 130 fraudulent bank loan applications.

10. As part of their investigation, agents obtained a search warrant for remotely stored electronic data belonging to Roddy. Agents recovered images of identification documents, such as driver's licenses and social security cards, for hundreds of individuals. Agents also located thousands of images of financial documents for many of those individuals, including insurance cards, bank loans, pay stubs, checks, vehicle title documents, and utility bills.

11. Relevant to the instant charges, agents found information belonging to O.J., a real person. In December 2024 and January 2025, Roddy exchanged messages with a third party about purchasing O.J.'s credit profile number. Roddy then provided this third party with photos of Roddy's face, and they discussed how to not make the photo "look weird on the ID." Roddy paid the third party for the credit profile number, a fictitious insurance card, and fictitious employment verification. Documents from Roddy's remote electronic storage confirmed that he had O.J.'s true employment information, social security number, date of birth, and driver's license number. There was also an image of a stock photo for "Passport Male Images." This same image appeared on a fictitious Texas driver's license found in Roddy's remote electronic storage. This fictitious driver's license included O.J.'s name and date of birth but listed a residential address in Amarillo that was not associated with O.J.

12. On January 28, 2025, Roddy used O.J.'s information to open an account at the Santa Fe Credit Union (SFCU) in Amarillo using the credit union's online banking portal. SFCU's accounts are insured by the National Credit Union Share Insurance Fund. Roddy used the fictious driver's license for O.J. described above to open the account. However, Roddy listed his own phone number. The same day, Roddy used O.J.'s SFCU account to apply for an auto loan. The loan was for $28,981.76 to purchase a 2018 GMC Yukon Denali from a car dealership in Amarillo. In support of the loan application, Roddy provided SFCU with the same fictitious driver's license he used to open the account, a fabricated W-9, fictitious proof of insurance, and fictitious pay stubs from Excel Energy, all purporting to belong to O.J. The loan documents were electronically signed using the email account "oliverjensen043@gmail.com." Agents recovered other messages from Roddy's remote electronic storage where Roddy represented this email address as belonging to him. SFCU relied on the documents submitted by Roddy and authorized the loan. The credit union then sent the check to the auto dealership. No payments were made on this auto loan. On March 3, 2025, Roddy was traffic stopped in Amarillo while operating a 2019 Dodge Charger. Inside the vehicle, officers located the registration application receipt for the 2018 Yukon listing O.J. as the owner.

13. On February 20, 2025, Roddy again used O.J.'s information to apply for a fraudulent auto loan, this time from Amarillo National Bank (ANB). ANB's deposits are insured by the Federal Deposit Insurance Corporation. Roddy used ANB's online loan application portal to apply for a loan in the amount of $21,958.32 for a 2016 Range Rover located at an auto dealership in Amarillo. Roddy used the email address

"trexvame@gmail.com" to create the account and apply for the loan. Roddy reported this as his email address in multiple text messages recovered from his remote electronic storage. When making the application, Roddy again used O.J.'s true name and date of birth, as well as the fictitious pay stubs from Excel Energy. However, in this application, Roddy used a fictitious Utah driver's license that displayed O.J.'s true name, date of birth, and Utah driver's license number, but included Roddy's own photograph in the place of O.J.'s. Relying on these fraudulent documents, ANB issued the loan to the auto dealership.

14. Roddy admits and agrees that he committed all the essential elements of the offenses alleged in counts one and three. Specifically, he admits that he executed a scheme or artifice to defraud both SFCU and ANB, both of which are financial institutions. That he did so with the intent to defraud SFCU and ANB. That is, he acted with the specific intent to deceive or cheat SFCU and ANB, for personal financial gain and to cause financial loss to SFCU and ANB.

15. That the scheme or artifice to defraud employed false material representations, specifically, that another individual was the individual making the loan application, when in fact it was Roddy, and also that the individual had legitimate employment and income, when in fact the pay stubs Roddy provided were fictitious. Finally, Roddy admits that he placed these financial institutions at risk of both civil liability and financial loss.

16. Roddy further admits and agrees that he committed all the essential elements of the offenses alleged in counts two and four. He admits that he knowingly

possessed and used the means of identification of another person, namely, O.J., and that he did so without lawful authority. He further admits that he possessed and used O.J.'s means of identification during and in relation to his commission of the offenses of bank fraud, in violation of 18 U.S.C. § 1344, as charged in counts one and three, respectively. Roddy further admits that he knew the means of identification belonged to O.J., who he knew was another real person.

AGREED TO AND STIPULATED on this 21 day of September, 2026.

RYAN RAYBOULD
UNITED STATES ATTORNEY

CALVIN LYNN RODDY, JR.
Defendant

C.J. McELROY
Attorney for Defendant

SEAN M. LONG
Assistant United States Attorney
Texas State Bar No. 24056734
1205 Texas Avenue, Suite 700
Lubbock, Texas 79401
Telephone: 806-472-7351
Facsimile: 806-472-7394
E-mail: sean.long@usdoj.gov